FAIR *v.* BEAL-BURROW DRY GOODS COMPANY.

Opinion dlivered April 25, 1921.

1. COMPROMISE AND SETTLEMENT—CONSIDERATION.—The compromise of a disputed claim furnishes sufficient consideration to uphold the settlement, even though the asserted claim is without merit.
2. COMPROMISE AND SETTLEMENT—EXECUTORY AGREEMENT TO MAKE.— An unexecuted agreement to make a settlement in the future, depending upon certain contingencies which never occurred, was without consideration, and did not constitute a completed and enforceable contract for a settlement.

3. ATTACHMENT—LOSS OF GOODS IN SHERIFF'S HANDS.—Plaintiff in attachment was not liable for goods lost by fire after the sheriff had taken possession, unless plaintiff directly caused the loss, or the loss was caused by the sheriff's negligence to which the plaintiff directly contributed.

4. ATTACHMENT—LOSS OF GOODS IN CUSTODY OF SHERIFF.—In an action by defendants to recover for attached goods lost by fire while in possession of the sheriff under writ of attachment, the burden was on the defendants to prove that the destruction of the goods was through the negligence of the plaintiff.

5. ATTACHMENT—LOSS OF GOODS BY PLAINTIFF'S NEGLIGENCE—EVIDENCE.—In attachment where defendants sought to recover from plaintiff for goods destroyed by fire while in the sheriff's possession under the writ, evidence *held* insufficient to prove that plaintiff's attorney undertook to direct the sheriff as to what disposition he should make of the goods for their safe-keeping and preservation during the sheriff's possession under the attachment.

6. ATTACHMENT—SEPARATE CAUSE OF ACTION AGAINST ONE OF SEVERAL DEFENDANTS.—In a joint cause of action in equity against several defendants, it was error to sustain a separate attachment against one of the defendants on an affidavit introducing a new and independent cause of action against each defendant alone, with which the other defendants were not concerned.

7. TRIAL—ERROR AS TO FORUM—TRANSFER.—Where, in a suit in equity against several defendants, a separate affidavit for attachment based upon a cause of action at law against one only of the defendants was interposed, the court should have treated such defendant's demurrer to the court's jurisdiction as a motion to transfer the separate cause of action to the law court, and transferred it accordingly.

8. APPEAL AND ERROR—HARMLESS ERROR.—Where a stock of goods was attached in an action at law, and the cause was subsequently transferred to equity, though the defendants admitted that they had violated the Bulk Sales Law and therefore were subject to be held liable as receivers, it was not material error to sustain the attachment and direct the property to be sold.

Appeal from Montgomery Chancery Court; *J. P. Henderson,* Chancellor; reversed in part.

*Earl Witt* and *Gibson Witt,* for appellants.

1. The court erred in holding that there was no settlement or compromise of the matters in controversy between appellants and appellee.

2. The chancellor erred in not sustaining the claim for damages by appellants for loss of the property attached, and appellee should be held liable for the loss by reason of its compromise and settlement.

The chancellor was wrong in holding that there was no settlement but merely a proposition. Compromise of a disputed claim is a sufficient consideration for a settlement. 21 Ark. 69; 43 *Id.* 172; 68 *Id.* 82; 74 *Id.* 270; 99 *Id.* 588; 114 *Id.* 559; 126 *Id.* 327. There was sufficient consideration for a compromise and settlement, and the chancellor's findings as to the effect of the agreement is clearly against the preponderance of the evidence.

Negligence in care of the attached property was shown for which appellee was liable. Where a sheriff acts under the direction or advice of plaintiff or its attorney, and there is negligence and loss, the plaintiff is liable. 4 Cyc. 580; 35 *Id.* 1615; 4 *Id.* 675; 74 Ark. 413; 47 *Id.* 373; 96 *Id.* 444.

A person can not recover from a sheriff for negligence, if he has contributed to the result by his own negligence or that of his attorney employed to supervise the procedure. 55 Cyc. 1637; *Ib.* 1621. The plaintiff in execution has the right to control the execution by himself or attorney and the officer must follow his instructions. The authority of plaintiff must not be exercised to cause the sheriff to omit a statutory duty; if he does he can not take advantage of it. 74 Ark. 412; 47 *Id.* (*Jett* v. *Shinn*); 96 Ark. 446.

The findings of a chancellor are not conclusive on appeal, but only persuasive; and where against the clear preponderance of the testimony they will be reversed. Here they certainly are. 50 Ark. 358; 91 *Id.* 549; 101 *Id.* 510; 104 *Id.* 9; 92 *Id.* 59; 104 *Id.* 488.

3. The demurrer to the complaint should have been sustained. There is nothing stated to give the chancery court jurisdiction. There is no proof to sustain the attachment against Summit. The chancellor erred in sustaining the attachment on the ground of fraud. The Bulk

Sales Law was not intended to provide a separate and additional ground for attachment at law. The remedy is the appointment of a receiver. If the property is sold in bulk without an invoice and notice to creditors, it is *void,* and each purchaser is a trustee for creditors to the extent of his purchase. 123 Ark. 285; 127 *Id.* 296; 135 *Id.* 420; *Ib.* 252-7; 137 Ark. 37.

An attachment remedy is purely statutory, and attachment laws are strictly construed.

4. Stand. Enc. Proc. 323; 1 Ark. 386; 3 *Id.* 502; 28 *Id.* 469; 18 *Id.* 236. A fraudulent motive must prevail in attachment. 31 Ark. 31; 41 *Id.* 316. Insolvency alone is not sufficient, but some ground of attachment must be alleged and proved. 4 Cyc. 414; 42 N. W. 812. Fraud in law or constructive fraud is not sufficient to constitute a fraudulent transfer; there must be actual fraud or fraudulent intent. 4 Cyc. 439. Injury also must be shown to the particular creditor. 63 Ill. 48; 32 Tex. 225; 31 Ill. 17. The creditor who first secures an attachment obtains a prior lien. Under the Bulk Sales Law, the purchaser becomes liable to all creditors *pro rata.* On the whole case great injustice has been done appellants, and the chancellor erred in sustaining the attachment and in failing to hold appellee liable.

*Reid, Gray, Burrow & McDonnell,* for appellee.

1. There was no agreement or compromise; but, if there was, there is no proof that the alleged breach contributed to the loss of the goods. The burden was on defendants.

2. There was no negligence in caring for the attached property, and in the absence thereof there can be no recovery.

3. The attachment was properly sustained for violation of the Bulk Sales Law, the sale being fraudulent, unlawful and void. 54 Ark. 6; 135 *Id.* 420; 52 *Id.* 30; 135 *Id.* 252; 120 *Id.* 236; 123 *Id.* 285.

This case was tried in chancery and on equitable principles, and the court properly enforced the Bulk Sales

Law.   The chancellor found there was no negligence, and his findings are clearly sustained.

WOOD, J.   The appellee, a mercantile firm in the city of Little Rock, filed an affidavit for a general attachment in the Montgomery Circuit Court against the appellants, alleging that Summit and Fair were partners and that the firm of Summit & Fair became indebted to the appellee for merchandise; that Summit sold his interest in the firm to Dillard; that Dillard & Fair sold their entire stock of goods and merchandise to Byrd Carter and James Tucker; that Carter & Tucker sold their entire stock of goods and merchandise to Ira Warren.   The grounds alleged for the attachment were that the various sales made by the above parties were in violation of the "Bulk Sales Law," act 88 of the Acts of 1913; that the last purchaser, Ira Warren, was disposing of his property with an intent to cheat, hinder and delay his creditors.   An order of general attachment was issued and levied, January 20, 1919, on a stock of merchandise which was then in the possession of Warren.   Various other creditors of the appellants intervened and set up claims against the appellants.   The appellants demurred to the complaint on the ground that the court had no jurisdiction, which demurrer was overruled.

By consent of parties, the cause was transferred to equity.   The appellants answered, admitting the transfers of the stock of merchandise as alleged in the complaint, but averred that such transfers were all made in good faith as to creditors and without any intent to cheat, hinder or delay them; that it was the understanding and agreement that the vendee in each sale was to assume the indebtedness of the vendor; that the appellee had ratified these sales and was estopped to complain of any failure to comply with the Bulk Sales Law; that the attachment was wrongfully issued and levied upon the property; that the building which contained the attached stock of mrchandise was locked and the same was burned, and the stock of merchandise under attachment was totally

destroyed, through the negligence of the sheriff having the same in charge, who was acting under the direction of the appellee's attorney; that the value of the merchandise was $3,694; that, before the fire and after the cause was transferred to equity, an agreement was reached between the appellants and the appellee whereby a compromise and settlement was had of the controversy, which was binding upon the appellee, but which it failed to carry out, which contributed to the loss sustained by the appellants in the destruction of the property by fire. The appellants made their answer a cross action against the appellee for damages in the loss of the stock of goods.

On the 4th of November, 1919, the appellee filed another and separate affidavit for general attachment against appellant Summit, alleging that, in addition to what they had already alleged in the former general affidavit, Summit was indebted to the appellee in the sum of $578.50, and that he was a nonresident, and had departed from the State with the intent to defraud his creditors; that he had removed and was about to remove a material part of his property out of the State and had disposed of his property with the fraudulent intent to cheat, hinder and delay his creditors. This affidavit was filed as a part of the original action, and an attachment was issued and levied on some mules, which were released from the attachment on a bond filed in the chancery court by the appellant Summit.

On January 20, 1920, Summit demurred to the affidavit or complaint for attachment against him on the ground that "it was upon a different and separate demand; that the plaintiff had a complete and adequate remedy at law, and that the court was without jurisdiction." The demurrer was overruled.

The appellee filed a reply to the answer of the appellants, denying the allegations thereof. The trial court found that the sales were in violation of the Bulk Sales Law, and for that reason sustained the attachment; that it was not shown by a preponderance of the evidence that

the loss of the stock of goods by fire was caused through the negligence of the appellee; that there was no settlement or compromise of the dispute between the appellants and the appellee; that the separate attachment against W. F. Summit should be sustained. The court thereupon entered a personal decree against the appellants in certain amounts, the correctness of which amounts is not in controversy here. From that decree is this appeal.

1. The appellants contend first that the court erred in holding that there was no settlement or compromise of the matters in controversy between the appellants and the appellee. On this issue the testimony of several witnesses on behalf of the appellants tended to prove the following: The appellants after this action was begun had a contract with one Mr. Eaves, who was one of the credit men and agents of the appellee, to the effect that appellants were to give their notes with security for enough to settle the claims of all creditors; that the appellants had the goods sold to Pendergrass and Lackey, who had agreed to pay cash for the goods at the invoice price ($3,289). Eaves was to come within two weeks after the agreement was entered into to turn over the goods to appellants. Eaves set three or four dates to be at "Simms," the place where the goods were located, but he never came, and appellants were, therefore, not in a position to deliver the goods. The contract was in writing. It was left in possession of the attorney of the appellants and was lost. The reason the contract was not carried out was because Eaves did not come as promised.

The testimony of Eaves on behalf of the appellee was to the effect that, if the appellants would make a note or notes with eight per cent. interest satisfactory to appellee, it would withdraw the suit. The witness promised the appellants that he would be back in two weeks and tried several times to get there, but could not get a conveyance on account of the bad roads. There was no written contract. Witness put down on a piece of paper what appellants must do. Nothing was signed.

"The compromise of a disputed claim furnishes sufficient consideration to uphold the terms of a settlement or compromise, even though the claim be without merit." *Gardner* v. *Ward,* 99 Ark. 588; *Satchfield* v. *Laconia Levee Dist.,* 74 Ark. 270; *Lee* v. *Swilling,* 68 Ark. 82.

But the testimony above set forth does not show either a disputed claim or a settlement. The appellants concede that they owed the amount claimed by the appellee. There was no compromise agreement by which the appellants were to pay and the appellee was to accept less than the appellants owed. The most that can be said of the testimony is that it shows that the appellants and the appellee entered into an agreement by which a settlement was to be made in the future in a certain manner depending upon certain contingencies, none of which occurred. A memorandum of the tentative arrangement for a settlement was made, but not signed by the parties. This tentative arrangement was not based upon any consideration and did not constitute a completed and enforceable contract for a settlement.

The testimony tended to prove that the reason the contract for the settlement was not completed and the settlement made in accordance with the contemplated plan was because appellee's agent was unable, on account of bad roads, to return to Simms at the time promised. But this was wholly immaterial, because there was no liability against the appellee for failure to comply with the terms of the tentative negotiations for a settlement, which did not in law constitute a complete and enforceable contract.

Even if the above testimony were sufficient to establish an enforceable contract for a settlement and that the appellee breached the same, there is no testimony tending to prove that such breach was the proximate cause of any damage to the appellants. Whatever may have been the damage to appellants by reason of the destruction of the stock of goods by fire, there is no testimony tending to prove that the failure of the appellee's agent to return to Simms as promised in any manner

caused or contributed directly to produce the fire which destroyed the goods. These goods at the time of their destruction were *in custodia legis*. Being in the hands of the sheriff, the appellee was not liable for their destruction by fire unless it directly caused the same, or unless the same was caused by the negligence of the sheriff to which the appellee directly contributed.

2. This brings us to a consideration of whether or not there was any negligence on the part of the sheriff in failing to care for the attached property, causing the loss of same, for which the appellee is responsible. The sheriff testified that he took possession of the store under the attachment, locked the same, and asked Judge I. L. Awtrey, the attorney of the appellee, whether he wished the witness to bring the goods to Mount Ida, and the attorney replied, "Just fasten them up in the house and leave them there." Witness told the attorney for the appellee that if they were left over there witness would not be responsible for them; that they would be left there at the appellee's risk. The goods were burned. Witness tried to get insurance, but failed, and advised the attorney of appelllee about it, and the attorney said he would get insurance, and later said that he had done so.

I. L. Awtrey, the attorney for appellee, testified that the sheriff asked him if it would be necessary to bring the goods to Mount Ida, and witness told the sheriff that he did not think it would be necessary to move the goods before court convened; that it was only a few days before court would convene, and that the court would then direct what to do with the goods. The sheriff never asked witness anything about moving the goods after court convened. Witness never told the sheriff that he had insurance on the goods. Witness also stated that he had no recollection that the sheriff said to witness that he would not be responsible for the goods if they were left at Simms, and that they would be left there at the risk of the appellee. On the contrary, witness stated that if the sheriff had made such a statement to witness, witness

would have told him that the law made it his duty to hold attached property subject to the orders of the court.

The burden was upon the appellants to show that the destruction of the goods by fire was through the negligence of the appellee. The chancellor found that the above testimony was not sufficient to show by a preponderance of the evidence that the appellee took charge of the goods, or that its attorney directed the sheriff to leave the goods in the storehouse at Simms at the risk of the appellee. The finding of the chancellor is correct. A preponderance of the evidence does not prove that the appellee's attorney undertook to direct the sheriff as to what disposition he should make of the goods in order for their safe-keeping and preservation after the sheriff had taken possession of the same under the attachment.

3. Did the court err in sustaining the separate attachment against W. F. Summit? The original action was brought against Summit and the other appellants at law by filing an affidavit or complaint for attachment, in which the sole ground alleged for the attachment was the violation of the Bulk Sales Law. Summit and the other appellants demurred to the complaint on the ground that, according to the allegations of the complaint under the Bulk Sales Act, the appellants were receivers, and that the chancery court had no jurisdiction. The court overruled the demurrer. The appellants did not stand on their demurrer, but on the contrary moved the court to transfer the cause to the chancery court, which, with the consent of the appellee, was done.

After the cause was transferred to the chancery court, Summit and the other appellants proceeded to answer the complaint. Later the appellee filed an affidavit for attachment against the appellant Summit, alleging that same was in addition to what had already been alleged by it in the original complaint. The appellant Summit demurred to this affidavit on the ground, among others, that this affidavit was a misjoinder of the cause of action stated therein with the cause of action stated in the original complaint; that the appellee's remedy on

this affidavit was complete at law and that the chancery court was without jurisdiction. The court overruled this demurrer.

The court erred in taking jurisdiction of the separate cause of action against Summit. The separate affidavit for attachment against him introduced a new and independent cause of action against Summit alone. It was grounded upon a different amount from that set forth in the original complaint or affidavit, which was a joint action against all the appellants. The separate affidavit against Summit was for his individual debt. The affidavit was not germane to the original complaint or affidavit and could not properly be considered as an addition thereto or amendment thereof. It stated a cause of action at law against Summit, and the remedy at law was complete. Summit made seasonable objection to the jurisdiction of the court, and did not waive his right to have a law court determine any issues arising on this separate attachment. The chancery court, therefore, erred in assuming jurisdiction and sustaining the separate attachment against Summit. The trial court should have treated Summit's demurrer as a motion to transfer, and should have transferred the cause of action against Summit as set up in this separate affidavit to the law court.

4. Appellants contend, in the last place, that the court erred in holding that the violation of the Bulk Sales Law by them was a ground of attachment. As we view this record, it is unnecessary to decide, and we do not decide, whether a violation of the Bulk Sales Law is a ground for attachment. The cause, though begun at law, was at the instance of appellants transferred to equity. The appellants admitted that they owed the debts, and that each had assumed to pay the same, and that in the sale of the goods impounded by the attach-ment, they had violated the Bulk Sales Law, act 88, *supra*. In their answer and cross-action, appellants asked that a receiver be appointed as contemplated by the Bulk Sales Law. The property was already in the custody of

the law when the appellants had the cause transferred to the chancery court.

Now, since the stock of goods was destroyed by fire without any negligence on the part of the appellee which would render it liable in damages to the appellants, it is wholly immaterial whether the stock of goods was impounded to be subjected to the appellee's debt through the ancillary process of attachment or through a receivership appointed by the chancery court. The appellants, as the court found, did not prove by a preponderance of the evidence that they had been damaged by the appellee in the impounding of the property through the attachment. Therefore, even if it were conceded that the court erred in sustaining the attachment against the appellants because of a violation of the Bulk Sales Law, this error did not result to their prejudice.

The court erred in assuming jurisdiction of and in sustaining the separate attachment as to appellant Summit. The decree as to him on the cause of action set up in the separate affidavit for attachment against him is reversed, and that action will be remanded with directions to transfer the same to the law court. The decree in all other respects is correct and it is affirmed.